This case reaches this court from Division Two, it having been certified to such court by a full vote of the St. Louis Court of Appeals, and upon two grounds (1) that there was a constitutional question involved, and (2) that the amount involved exceeded $7,500. The opinion in Division Two having been rejected the case has fallen to me.
Angela McMenamy is the unfortunate insane wife of respondent John McMenamy. The wife inherited some property. The husband had not at first been officially in charge of the estate, and after she became insane he placed her in St. Vincent's Hospital, where during all the years he had cared for her. Delphine McMenamy Seabold was the instrument through which her father, John McMenamy, and Dr. Kane were appointed joint guardians by the probate court (by agreement) August 6, 1917. McMenamy in the fall of 1906 had placed the wife at St. Vincents, where she has been ever since. Shortly after Dr. Kane became co-guardian he began proceedings to have McMenamy ousted. There were negotiations between the parties upon the theory that if John McMenamy filed in the estate a satisfactory inventory, Dr. Kane was to get out and Mr. McMenamy continue with the estate. He did file his statement, or inventory, and the court expressly found that the delay was due to negotiations between the parties. *Page 107 
There has never been any difference between this inventory and the one claimed by Dr. Kane (who seemingly represents the daughter) except the sum of $24,000. This Mr. McMenamy claimed to have been a gift from his wife to him on a Christmas day, several years before there was an estate of Angela McMenamy, Insane. In other words, he claimed that this was his property by gift long prior to there being an estate, and long prior to the date of insanity. The case reached the circuit court, after adverse judgment in the probate court. No formal pleading in behalf of defendant was filed in the probate court. McMenamy who, as stated by his then counsel, was precluded below, filed (as he claimed) in the circuit court a full and complete answer, setting out all that Dr. Kane claims to be in this estate, except this $24,000. As to that McMenamy pleaded that it was his, and has never been a part of the estate. He claimed it was a gift, and Kane by reply put in issue (1) that it was not a gift, and (2) that a gift could only be evidenced by writing, and this was not so evidenced, although the evidence hardly bears out this theory, and (3) that if it was a gift the wife was insane and could not make it. There was a three days' trial upon these issues (joined in by both parties) and at its conclusion the finding was in favor of McMenamy upon each and every claim. Kane then appealed to the St. Louis Court of Appeals, where at first the probate court which had ousted McMenamy was sustained, but upon a rehearing the Court of Appeals held (1) that a constitutional question was in the case and (2) that the amount involved was over $7,500. Thus the case reached us, but some further detail will be necessary for a complete understanding of the full issues. This is only partial. The amounts transferred (largely in excess of $7,500) were in notes and a check. The check was for $7,500 and signed by Angela McMenamy. Notes to a large amount had to be assigned by her, and all this in the presence of a Christmas party of respectable and well known people and neighbors and kinsmen of these persons. One had served as Lieutenant-Governor *Page 108 
of this State at one time and later as Adjutant-General. So the court sitting as a jury upon issues at law could not well question the character of the witnesses, and the court so sitting found a gift in the sum of $24,000. The same would apply to mental capacity. The court found that also. The issues as finally made were issues at law, and not issues in equity.
I. This cause assumes several peculiar angles. The constitutional question was submitted upon and by an instruction given by the trial court (circuit), presumably upon evidence upon which to found it. We do not have a case where a party has sought to inject a constitutional question and then theConstitutional same party seek to have the reversal upon aQuestion. failure to consider such a question, but we have a case where a trial court has given an instruction covering constitutional questions, and one wherein the whole appellate branch says there is a constitutional question in the case, and for one of its grounds of certification sends the case here. In other words, the trial court finds the facts for an instruction and this court without reviewing the facts, says there is no constitutional question, even after the Court of Appeals says there is. It is not the usual case of constitutional question and should at least be treated with respect to the facts found by the trial court, which court (upon such facts) gave the instruction. This is not the most material question upon this appeal.
II. The Court of Appeals was also of opinion that more than $7,500 was involved. For this there may be two good and sufficient reasons assigned. The case was tried de novo in the circuit court. The parties without serious objections framed their own issues. They were issues of fact at law,Amount in and not in equity. Among these issues were (1)Dispute: that the wife gave the husband $24,000, and (2)Trial Theory. that she was sane when she did it. The latter was injected by the reply of the appellant. Not only were *Page 109 
issues framed, but three days' time taken up in trying these issues, and instructions were asked and given. Whether or not this money belonged to the husband personally or to the wife's estate was the trial theory below. No doctrine is better settled than that the trial theory below must be followed in this court. A case cannot be tried upon one theory below, and upon a totally different theory in the appellate court. "It is axiomatic that in an appellate court the cause should be heard upon the same theory it was heard nisi." [Kilpatrick v. Wiley, 197 Mo. l.c. 171; State ex inf. v. Light Power Co., 246 Mo. l.c. 664; Benton Land Co. v. Zeitler, 182 Mo. l.c. 265; Crecelius v. Ry. Co., 284 Mo. l.c. 37; White v. Railroad, 202 Mo. l.c. 561.]
The court, sitting as a jury found for McMenamy upon both of these vital questions (1) that the $24,000 was his, and (2) that the wife was sane at the time. The case, as tried, not only involved more than $7,500, on the theory above discussed, but demonstrates that he had filed a true account and was not subject to removal. In other words, there was no failure to give a true account. They chose to try out all the issues and are bound by them. The only ground of removal was his alleged refusal to account for this $24,000. The circuit court found that he should not be removed, thus finding the issues of fact for McMenamy. The question of our jurisdiction is seriously argued here.
III. No serious complaint is made as to the instructions upon which the case issues were submitted. The only complaint is that the parties joined upon issues upon one theory, when they think now they should have made and joined upon other issues. If parties, without objections, make issues andInapplicable submit their case upon them to the trial court, itInstructions. is too late to complain here, as we have above stated. There was ample and substantial evidence to sustain the finding of the court, and absent error, as *Page 110 
here, estoppel as to judgment applies. This means absolute bar by judgment upon the framed issues.
By this we mean that this present judgment would bar a recovery, absent error upon the framed issues, and no judgment could be procured by Kane in view of the present judgment, in any suit which he might bring, if McMenamy should be ousted. The facts, however, did not prove a right to ouster. McMenamy made a complete inventory, and proved that $24,000 was his property.
But we have a further thought in mind. Res adjudicata is of two kinds in the trial of law suits: (1) res adjudicata as to the judgment and (2) res adjudicata as to some particular fact litigated between the parties. Of the latter for a moment. The circuit court record in this case, so far as pleadings are concerned, shows as we shall quote from appellant's abstract of record. When the case reached the circuit court, the record recites:
"The answer of respondent John McMenamy (caption, signature and affidavit omitted) filed in the circuit Court of the City of St. Louis, Missouri, February 25, 1919, was as follows."
The substance of this answer was as we have indicated. To this answer or the filing thereof, there was no serious objection. It is long and we need not quote. Suffice it to say that it accounted for all the estate, except the alleged gift. The reply was to this effect:
"Now comes R. Emmet Kane, guardian of Angela McMenamy, noncompos mentis, and by leave of court first had and obtained, files his amended reply to the answer and return of John McMenamy to the petition for his removal, and for reply denies each and every allegation in said answer contained.
"Further replying, he specifically denies that on or about the 25th day of December, 1894, his said non compos ward, said Angela McMenamy, made a gift to the said John McMenamy of the sum of twenty-four thousand dollars out of her estate, or any other sum. *Page 111 
"Further replying, he states that on the said 25th day of December, 1894, and prior to said time, and since said time, the said Angela McMenamy was a person of unsound mind, and did not have at any of said times sufficient mental capacity to make a gift or other disposition of her property.
"Further replying, he specifically denies each and every allegation in said answer contained.
"Wherefore, having fully replied, he prays as in his petition, for removal."
The record entries in the abstract of record further shows:
"February Term, 1919 — February 25, 1919. Cause called for hearing, parties appear and trial progressed. Answer and returnof John McMenamy filed by leave. Reply of R. Emmet Kane to answerand return of John McMenamy filed. Further hearings laid overuntil to-morrow at 10 A.M.
"February Term, 1919 — February 26, 1919. Trial progressed and further hearings laid over until tomorrow at 10 A.M.
"February Term, 1919 — February 27, 1919. Trial progressed and finished and cause taken under advisement.
"April Term, 1919 — April 7, 1919. Motion of R. Emmet Kane, co-guardian, to have John McMenamy, co-guardian of Angela McMenamy, removed, overruled. Declarations of law filed.
"April Term, 1919 — April 10, 1919. Motion of R. Emmet Kane, guardian of Angela McMenamy, for a new trial filed.
"April Term, 1919 — April 11, 1919. Amended motion of R. Emmet Kane, guardian of Angela McMenamy, for a new trial filed.
"June Term, 1919 — June 16, 1919. Motion and amended motion of R. Emmet Kane, guardian of Angela McMenamy, for a new trial overruled.
"June Term, 1919 — June 19, 1919. Affidavit for appeal filed. *Page 112 
"June Term, 1919 — June 20, 1919. Appeal allowed R. Emmet Kane, guardian of Angela McMenamy, to St. Louis Court of Appeals.
"October Term, 1921 — October 3, 1921. Bill of exceptions of R. Emmet Kane, co-guardian, allowed, signed, filed and made part of the record.
"Appellant's bill of exceptions, filed October 3, 1921, was properly entitled of the court and cause and with the testimony abstracted, read as follows."
Throughout the whole record there never was a serious objection to the issues made as to the compass and course of trial. The remainder of the record entries in the circuit court read:
"Now comes R. Emmet Kane, heretofore appointed one of the guardians of said Angela McMenamy, n.c.m., and states to the court that after his appointment he ascertained that John McMenamy, his co-guardian, had been in charge of the properties of the said Angela McMenamy, n.c.m., since 1896, and that the said Angela McMenamy received from the estate of her father, the late Joseph O'Neil, in 1895, the sum of $36,798.62; that this money has been in the possession of the said John McMenamy since 1896; that the said McMenamy has stated that at some time in 1895 he invested $15,000 of the money he held belonging to the said Angela McMenamy, n.c.m., in a certain piece of property at Twenty-second and Morgan streets; and the said McMenamy has further stated that he has received as rentals of said property $87,478.07 and disbursed $48,858.43, and that there is still a balance due said estate from the rents collected from said Twenty-second and Morgan streets of $38,619.84; and that the said McMenamy has further stated that the said Angela McMenamy inherited from her father a certain piece of real estate on Wash Street, and that he has collected rents therefrom amounting to $12,576 and disbursed $5,652.81, and that he still has a credit from the rents collected from said Wash Street due the said Angela McMenamy, n.c.m., of $6,923.19; that when an endeavor was made to have *Page 113 
the said John McMenamy account for the $22,000 received by the said Angela McMenamy in addition to the above amounts from the estate of her father, he declined to make any statement except to say that the matter was of no concern to the representative of your petitioner; that other attempts have been made to secure an accounting from the said McMenamy, but in vain.
"Wherefore, your petitioner prays that the said John McMenamy be cited to appear before your Honor and to show cause why he should not be removed as guardian of the said Angela McMenamy,n.c.m.,"
This was the original pleading before the case reached the circuit court, where the issues were broadened, as shown.
When the case reached the circuit court and was to be tried there, it would seem that there was a question as to the right of McMenamy to file an answer or return: We quote in full:
"Thereupon, the following proceedings were had in the case at bar, to wit:
"MR. MARSHALL: I will ask your Honor to sign this term bill of exceptions.
"MR. LEAHY: Are you asking me to file that, Judge?
"MR. MARSHALL: Not yet.
"MR. LEAHY: We desire to object, if he does ask.
"THE COURT: You have O K'd it.
"MR. MARSHALL: He is talking about another matter.
"THE COURT: This is a term bill of exceptions to the ruling of the court in striking out —
"MR. LEAHY: Yes.
"MR. MARSHALL: Now, if your Honor please, I ask leave to file a return or answer to the application of Dr. Kane to the citation that was issued in the probate court. I understand Mr. Leahy wants to make an objection.
"MR. LEAHY: We desire to object to that. This is a mere self-serving statement; it is an argument; it might be proper in a brief, perhaps, but, otherwise, I say that there are no pleadings here. *Page 114 
"THE COURT: Isn't the test this: Suppose this is a trial denovo here?
"MR. LEAHY: Yes.
"THE COURT: Suppose that McMenamy had been cited to appear to show cause why he should not be removed in the probate court, would he then have had an opportunity of filing an answer to that order to show cause?
"MR. LEAHY: I think so.
"THE COURT: That is what he is doing here.
"MR. LEAHY: This is mere argument.
"THE COURT: Of course, I don't know —
"MR. LEAHY: It won't do any harm to file it.
"THE COURT: In other words, if he had a right to do it down there, he has a right to do it here.
"MR. MARSHALL: I didn't get a chance to do it down there.
"MR. LEAHY: Well, we desire to object on the ground it is not proper at this time.
"THE COURT: Well, of course, an objection wouldn't reach it. If you demur to it, then I would have to pass upon the sufficiency of it from a legal standpoint. If you are simply going to object to it, I will have to overrule it.
"MR. LEAHY: Very well, your Honor. We will except to the ruling of the court. We will be able to use this, perhaps, to expedite the hearing.
"MR. MARSHALL: That is one of the purposes of it."
It will be noted that even Mr. Leahy said "it would do no harm to file it."
The court offered to pass upon the disputed questions if Mr. Leahy would demur to it or strike at it in some way, but Leahy declined so to do, filed a reply to it, and proceeded to trial on all issues made by the pleadings. The foregoing shows a full trial upon a matter of fact, and one by the tacit consent by all parties. From this standpoint we desire to discuss our second point of res adjudicata. It also applies, however, to the first point, i.e. res adjudicata as by judgment. *Page 115 
IV. Suppose McMenamy were removed, and Dr. Kane proceeded to sue for the $24,000, what would be the situation? First, McMenamy, has by the concerted action of the other parties had a court sitting as a jury to say that he owed the estate nothing, and therefore there is no adverse interest for which they claimed that he could be removed. This, on the well founded theory that he had a right to deny adverse interest on the very charge preferred by Dr. Kane. The court by its verdict says that there was no adverse interest. Secondly, the parties framed pleadings upon the question of a gift of $24,000 to the husband by the wife, and thirdly that she had the mental capacity to make the gift. The court sitting as a jury in this circuit court, found by its general finding that this gift of $24,000 was at a time when the wife was sane. These findings show no adverse interest, because he had accounted for every other cent of the estate. Having joined in these two issues the parties appellant are now estopped. Stating it otherwise they cannot change in this court the course of trial in the circuit court.
Even the adjudication of a single fact as between the two adverse parties, will estop the litigation of that fact in any future litigation. In Herman on Estoppel Res Judicata, sec. 407, p. 477, it is said: "When a fact has been directly tried and settled by a court of competent jurisdiction, it cannot be contested again between the same parties or their privies, in the same or any other court." In this case, under accepted issues, it was determined by the circuit court that John McMenamy owned this $24,000. This was a determination of a fact, which determination cannot be disturbed except by the Supreme Court, because it is the only court having appellate jurisdiction over such sum. We discuss all these matters, because they clearly show jurisdiction in the Supreme Court, and that our own judgment setting aside such judgment by re-transferring to the Court of Appeals would violate every principle of due process of law. If McMenamy were removed (without adjudication of *Page 116 
the alleged sum due) and Dr. Kane sued for the $24,000, the appeal would lie in this court and not otherwise. Yet it is said that McMenamy failed to report on $24,000, and the matter of his removal (concededly based on such sum) went to the Court of Appeals.
The Court of Appeals was right in certifying this case to our court, and here the judgment of the circuit court must be affirmed because the most that can be said is, that it is one on conflicting evidence. Under the issues the instructions were proper, and under the evidence these findings of the circuit court bind this court.
The judgment of the circuit court should be affirmed. It is so ordered. All concur.