In re the ESTATE OF Veva DAVIS.

Victor & Mary R. SCOTT, Respondent,

v.

Mary Louise LEE, Guardian Ad Litem & Conservator, Appellant.

No. WD 39947.

Missouri Court of Appeals, Western District.

Aug. 2, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1988.

Michael Paul Harris, St. Joseph, for appellant.

Joseph B. Phillips, Stockton, for respondent.

Before KENNEDY, C.J., and LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

Appellant Mary Louise Lee, guardian and conservator of Veva L. Davis, appeals from an order of the Circuit Court of Buchanan County, Probate Division, appointing respondents, Mary and Victor Scott, as successor co-guardians and co-conservators of Veva L. Davis. We reverse and remand with instructions.

On June 8, 1987, the trial court entered its order removing Terry L. Rumery as guardian and conservator of Veva L. Davis, a ninety-six year old patient at Heartland Center, a health care facility in St. Joseph, Missouri. Thereafter, on June 22, 1987, the trial court entered its order appointing Mary Louise Lee, Public Administrator of Buchanan County, as successor guardian and conservator of Veva Davis, conditioned upon her obtaining a $700,000.00 corporate surety bond. Letters of Successor Guardianship and Conservatorship were issued by the Probate Division on June 24, 1987. Thereafter, Mrs. Lee proceeded to undertake her duties as guardian and conservator of Veva Davis by filing a written application for the appointment of a certified public accountant, and preparing and filing her Inventory and Appraisement of the estate. The value of Ms. Davis' estate at that time was estimated to be $708,046.08. Mrs. Lee also visited Veva Davis at Heartland Center, and paid Ms. Davis' past-due bill at Heartland.

On August 7, 1987, respondents, Mary and Victor Scott, filed their Petition for Appointment as Successor Guardian and Conservator of Veva Davis. On September 30, 1987, a hearing on their petition was held in the Probate Division of the Buchanan County Circuit Court.

Mrs. Scott testified that she was sixty-two years of age and that she is Ms. Davis' second cousin. She stated that she and her husband resided in Stockton, Missouri, some two hundred miles from St. Joseph, and that, prior to January 8, 1986, she had not visited Ms. Davis for over two years. Mrs. Scott testified that she was unaware of Ms. Davis' considerable financial assets until January 8, 1986, when she received a copy of an annual final settlement filed by Terry Rumery, a public administrator who was Ms. Davis' guardian and conservator at that. time. Mrs. Scott further testified that, between January, 1986, and September 30, 1987, the date of hearing, she visited Ms. Davis four times.

Mr. Scott testified that he was not a blood relative of Ms. Davis and was related only by marriage.

Evidence presented on behalf of Mrs. Lee established that she was appointed Public Administrator of Buchanan County during June of 1987, that she was handling at least eighty cases on which she was bonded, and had never been denied bond for any reason.

During the direct examination of Whitney Potter, Jr., who is employed as assistant to Mrs. Lee in the Public Administrator's Office, the Scott's attorney agreed to stipulate that Mrs. Lee was properly handling Ms. Davis' affairs and was not guilty of any act which would justify her removal:

MR. PHILLIPS: We have no rocks to throw at Mrs. Lee as to her performance as public administrator. We just don't feel inherently. it can be the same as a relative, and we would stipulate that she's—to our knowledge, she has not done anything that would—such as the previous public administrator, to justify her removal. We have no evidence or indication—any indications of that line at all; and we wouldn't—we wouldn't attempt that.

THE COURT: All right. So as I understand it, you're willing to stipulate that Mrs. Lee's performance in handling the affairs of Ms. Davis, as guardian and conservator, to your knowledge, do not constitute anything that would require her removal.

MR. PHILLIPS: Anything that she has done. That's correct.

THE COURT: Is that satisfactory to you?

MR. HARRIS: Yes, Your Honor.

THE COURT: All right.

At the conclusion of the evidence, the court found that Mrs. Lee was doing a capable job and was performing her duties and responsibilities as guardian and conservator in an acceptable manner. Nevertheless, the court held that a relative was to be given preference under the law. Accordingly, on September 30, 1987, the court entered its order appointing the Scotts as successor co-guardians and co-conservators of Veva Davis. This appeal followed.

Our standard of review in a court-tried case such as this is to affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

In her sole point on appeal, Mrs. Lee claims that the trial court erred in appointing the Scotts as successor co-guardians and co-conservators because she could only be removed as guardian and conservator of Ms. Davis for cause.

The removal of a guardian or conservator is governed by § 475.110, RSMo. (1986) which provides:

When a minor has attained the age of fourteen years, the guardian of his person may be removed on petition of the ward to have another person appointed guardian if it is for the best interests of the ward that such other person be appointed. When the spouse of an incapacitated or disabled person is appointed his guardian or conservator, such spouse shall be removed as guardian or conservator upon dissolution of his marriage with the incapacitated or disabled person. A guardian or conservator may also be removed on the same grounds as is pro-

vided in section 473.140, RSMo, for the removal of personal representatives.

Under the grounds enumerated in § 473.140, a guardian or conservator may be removed if the guardian or conservator:

becomes mentally incapacitated or is convicted of a felony or other infamous crime, or becomes an habitual drunkard, or in any manner incapable or unsuitable to execute the trust reposed in him, or fails to discharge his official duties, or wastes or mismanages the estate, or acts so as to endanger any corepresentative, or fails to answer any citation and attachment to make settlement....

Section 473.140, RSMo (1986).

It is well established that, "where [a] statute enumerates the grounds on which guardians may be removed, a removal on grounds not enumerated is unauthorized ... [a]nd the courts have no power to ingraft upon it a cause for removal not named in it." *State ex rel. Baker v. Bird,* 253 Mo. 569, 581, 162 S.W. 119, 122 (Mo. 1913). *Accord State ex rel. McWilliams v. Armstrong,* 320 Mo. 1122, 1129, 9 S.W.2d 600, 602 (Mo. banc 1928); *In re McMenamy's Guardianship,* 307 Mo. 98, 134, 270 S.W. 662, 673 (Mo. banc 1925). *See also In re Boeving's Estate,* 388 S.W.2d 40, 52 (Mo.App.1965).

 In the present case, the Scott's attorney stipulated that the manner in which Mrs. Lee was handling the affairs of Ms. Davis was completely proper and that no evidence existed which would justify her removal. The trial court, however, apparently chose to rely on the authority of § 475.050, RSMo (1986) and the body of case law which provides that preference is to be given to relatives in the appointment of a guardian or conservator.[1] This was error.

Section 475.050 provides in pertinent part that:

*Before appointing* any other person, organization or corporation as guardian of an incapacitated person, or conservator of a disabled person, *the court shall consider the suitability of appointing*

---

**1.** The order of the trial court merely states: [A]s relatives of Veva Lena Davis the Petitioners Victor S. Scott and Mary R. Scott have a priority to be named as her guardian and conservator in that they are found to be willing and able to act in said capacity.

*any of the following persons who appear willing to serve:*

. . . . .

(3) The spouse, parents, adult children, adult brothers and sisters and *other close adult·relatives* of the incapacitated or disabled person and any eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a duly probated will of such spouse or relative executed within five years before the hearing.

(emphasis added). Thus, where a court is faced with *original applications* for appointment filed by a close adult relative and some other party, § 475.050(3) mandates that preference be given to the close adult relative. Once a guardian and conservator is appointed and has given bond, however, the appointment is deemed valid, *see State ex rel. McWilliams v. Armstrong, supra,* 9 S.W.2d at 601, and a removal on grounds that are not provided for by statute is unauthorized. *Id.* at 602; *In re McMenamy's Guardianship, supra,* 270 S.W. at 673; *State ex rel. Baker v. Bird, supra,* 162 S.W. at 122; *In re Boeving's Estate, supra,* 388 S.W.2d at 52.

■ Even assuming § 475.050(3) can be read to provide a separate statutory ground which authorizes the removal of a duly appointed guardian and conservator and the appointment of a relative in his or her stead, we find that the statute by its express terms contemplates preference being given only to "close adult relatives."[2] In the present case, there was insufficient evidence from which to conclude that the Scotts were "close adult relatives." As second cousins, the consanguinity between the Scotts and Ms. Davis is attenuated, and the record fails to demonstrate that the Scotts and Ms. Davis shared a close personal relationship. By their own admission, prior to January of 1986, the Scotts had not seen Ms. Davis for over two years.

Moreover, courts addressing the removal of a public administrator in favor of a

relative have given weight to the timeliness of a relative's application for appointment. *See, e.g., In re Brinckwirth's Estate, supra,* 186 S.W. at 1052. Here, the Scotts acquiesced in the appointment of the prior public administrator, Mr. Rumery. They did not come forward with their petition for appointment until after appointment of Mrs. Lee. *See State ex rel. Baker v. Bird, supra,* 162 S.W. at 122 (indicating that, where the removal of a guardian is regulated by statute, the removal of a duly appointed guardian "in order to give place to a surviving parent, who has waived such right" is unauthorized). Although the Scotts contend in their brief that they failed to receive notice or hearing prior to Mrs. Lee's appointment, the record is devoid of any evidence on this issue. We are therefore precluded from considering this issue on appeal.

The order appointing the Scotts as co-guardians and co-conservators of Veva Davis is reversed and the cause remanded with instructions for the trial court to reinstate Mrs. Lee as Ms. Davis' guardian and conservator.

All concur.

---

2. This finding is consistent with those cases applying the common law rule granting a preference to close relatives, *see e.g., Roots v. Reid,* 555 S.W.2d 54 (Mo.App.1977) (nephew); *In re Brinckwirth's Estate,* 268 Mo. 86, 186 S.W. 1048 (Mo.1916) (uncles), and those cases interpreting

§ 475.050(3), the codification of the common law rule. *See, e.g., Matter of Crist,* 732 S.W.2d 587 (Mo.App.1987) (brother); *Matter of Gollaher,* 724 S.W.2d 597 (Mo.App.1986) (parents); *Brown v. Storz,* 710 S.W.2d 402 (Mo.App.1986) (mother).